UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FELANDO D. HUNTER, #738855,

                Petitioner,

                                      CASE NO. 2:18-CV-11228
v.                               HONORABLE PAUL D. BORMAN

DANIEL LESATZ,

                Respondent.
_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.**    **Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Felando D. Hunter ("Petitioner") was convicted of first-degree felony murder, MICH. COMP. LAWS § 750.316(b)(1), assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, armed robbery, MICH. COMP. LAWS § 750.529, first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  He was sentenced, as a second habitual offender, MICH. COMP. LAWS § 769.11, to life

imprisonment without the possibility of parole on the murder conviction, a concurrent term of 2 years 10 months to 15 years imprisonment on the assault conviction, a concurrent term of 13 to 20 years imprisonment on the home invasion conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2012.[1]

In his habeas pleadings, Petitioner raises claims concerning the alleged coercion of witnesses and trial counsel's failure to object and seek suppression of their testimony, alleged prosecutorial misconduct for improper vouching and trial counsel's failure to object to that conduct, and the admission of testimony relating to his own out-of-court statements about an unrelated carjacking. (ECF No. 1, Petition.) For the reasons set forth herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## II.   Facts and Procedural History

Petitioner's convictions arise from a home invasion and attempted armed robbery during which one person was beaten and another person was shot to death in Detroit, Michigan in 2012. The Michigan Court of Appeals described the underlying

---

[1]The trial court did not sentence Petitioner on the armed robbery conviction, finding that it "merged" with his felony murder conviction.

facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1);

*Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On August 8, 2012, Michael Montgomery (Montgomery) concocted a plan to rob the home of Melissa Villneff (Melissa). Accompanied by six other men, Montgomery traveled to her home that evening. Montgomery lured Patrick Villneff (Patrick) away from the home. Michael Evans (Evans), the driver, stayed behind in his vehicle. The remaining five men, Felando, Brandon, Fredrick Young (Fredrick), Reco Simmons (Reco), and Aquire Simmons (Aquire), approached the home. Felando was armed with an SK assault rifle given to him by Montgomery. Reco and Fredrick were armed with pistols, and Aquire was carrying a baseball bat.

> Terrance Villneff (Terrance) was inside the home, playing a video game. He recounted being struck on the side of his face, after which he found Felando pointing the SK rifle at his chest. Felando ordered Terrance to a bedroom. When Terrance did not answer Felando's questions, Felando ordered Aquire to beat Terrance with the bat. Aquire beat Terrance in the head, forcing Terrance to crawl to a closet.

> After this assault ended and the men left, Terrance heard several gunshots. Several children who had been playing outside had observed the armed men enter Melissa's home. They went to the house next door, where John Villneff (John), Melissa's father, lived. They told John what they saw, and he immediately called 911. He also stepped outside to his porch. As the men were leaving Melissa's home, they saw John. Reco fired a few shots toward John, followed by Felando, who fired several shots from the assault rifle. John was struck and killed by one of these bullets. All but Montgomery, who walked back to the home with Patrick after the shooting, fled in the vehicle driven by Evans.

> Felando and Brandon were tried jointly, but before separate juries. Evans and Montgomery testified against them pursuant to plea agreements. Felando and Brandon were convicted as described above.

*People v. Hunter*, No. 319020, 2016 WL 1039533, *1 (Mich. Ct. App. Mar. 15, 2016)

(unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review.  The court denied relief on those claims and affirmed his convictions and sentences.  *Id*. at *1-4.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Hunter*, 500 Mich. 958, 891 N.W.2d 486 (2017).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I. The police or the trial court violated his due process rights by coercing witnesses into incriminating him; alternatively, defense trial counsel was constitutionally ineffective in failing to move to suppress the testimony of the witnesses.

II. The prosecutor violated his due process rights by eliciting that two alleged accomplices were not only testifying under plea agreements, but had already pleaded guilty before trial, thereby improperly vouching for the credibility of the accomplices; alternatively, defense trial counsel was constitutionally ineffective in failing to object.

III. The trial court violated his due process rights by allowing the prosecutor to introduce his alleged out-of-court statement about an unrelated carjacking which was inadmissible and highly prejudicial character evidence.

(ECF No. 1, Petition.)  Respondent filed an answer to the habeas petition contending that it should be denied because certain claims are procedurally defaulted and all of

the claims lack merit.  (ECF No. 7, Response.)

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694

(2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63,

75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id*.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Woods v. Donald*, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not

'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief.  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   <u>Analysis</u>

### A.   <u>Procedural Default</u>

As an initial matter, Respondent contends that certain habeas claims are barred by procedural default.  The Court declines to address this procedural defense.  It is not a jurisdictional bar to review of the merits.  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  Such is the case here.  The procedural issues are complex and intertwined with the substantive claims such that the substantive claims

are more readily decided on the merits.  Accordingly, the Court shall proceed to the merits of Petitioner's claims.

### B.    Merits

### 1.    Witness Coercion and Ineffective Assistance of Counsel

Petitioner first asserts that he is entitled to habeas relief because the police and the trial court coerced witnesses into testifying against him at trial and trial counsel was ineffective for failing to object and seek suppression of those witnesses' testimony.  (Petition, PageID.39.)  Respondent contends that this claim is procedurally defaulted in part and that it lacks merit. (Response, PageID.119.)

Petitioner first asserts that the police coerced Demerious Cunningham and LaShonda Cunningham into (presumably falsely) testifying against him at trial and that such conduct is imputed to the prosecution. (Petition, PageID.42.) The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  The Supreme Court has also made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972).  Consequently, "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any

10

reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

The Michigan Court of Appeals considered this issue on plain error review and denied relief.  The court explained in relevant part:

> "Both our Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses." "Threats from law enforcement officers may be attributed to the prosecution." And "[a]lthough the issue of prosecution intimidation usually arises in the context of alleged intimidation of defense witnesses, this Court has condemned as well intimidation by the prosecution of its own witnesses." Our Courts generally consider issues pertaining to witness intimidation under the framework of prosecutorial misconduct. Ultimately, the question is whether, after examining the "statements and actions in context, the defendant was denied a fair and impartial trial."

> Felando first argues that Demerious Cunningham (Demerious) was coerced by police into incriminating Felando. Demerious testified that he spoke with police on August 9, 2012. He initially lied to police "[b]ecause [he] didn't want to be involved, and [he] was scared that something would happen to [his] family." However, he later told police the same version of events that he testified to at trial. When asked what changed his mind, Demerious testified that police threatened to "give [him] four years[ ]" for lying during a police investigation. Felando asserts that this threat denied him a fair trial. However, there is no prohibition against informing a witness of the potential consequences of making false statements. Nor is there any indication that police coerced Demerious into specifically implicating Felando. Rather, their actions encouraged Demerious to be forthcoming about what transpired. The officer's conduct did not deprive Felando of a fair trial.

11

Felando similarly asserts LaShanda Cunningham (LaShanda) was pressured into implicating Felando in the crime. But as was the case with Demerious, there is no evidence that police intimidated her into specifically implicating Felando. If anything, police encouraged her to provide complete and honest information. This did not deprive Felando of a fair trial. Moreover, LaShanda's testimony was of little consequence. LaShanda's testimony confirmed what was already known through the testimony of several other witnesses: that Felando and others came to her home the morning of August 9, 2012, and that Felando was in possession of a large, black gun. In light of the substantial evidence admitted against Felando, any error in admitting LaShanda's testimony was not outcome-determinative.

*Hunter*, 2016 WL 1039533 at \*2 (footnotes with citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Under federal law, a criminal defendant does not have standing to challenge the voluntariness of a statement made by a witness to the police because the privilege against self-incrimination of the Fifth and Fourteenth Amendments is personal in nature and does not extend to third parties called as witnesses at trial. *United States v. Nobles*, 422 U.S. 225, 234 (1975); *Berry v. Mintzes*, 529 F. Supp. 1067, 1075 (E.D. Mich. 1981). While the United States Court of Appeals for the Sixth Circuit has indicated that the use of a witness's coerced testimony may violate a defendant's rights under the Due Process Clause of the Fourteenth Amendment, *see Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), the United States Supreme Court has not so ruled. *See Samuel v. Frank*, 526 F.3d 566, 569 (7th Cir. 2008); *see also Johnson v. Bell*, 525 F.3d 466, 479-81

12

(6th Cir. 2008) (distinguishing *Webb v. Texas*, 409 U.S. 95 (1972), and *Washington*

*v. Texas*, 388 U.S. 14 (1967), and denying relief on claim that authorities coerced

witness into providing favorable prosecution testimony).  Consequently, absent a

showing that the disputed testimony was false, Petitioner arguably fails to state a

claim upon which habeas relief may be granted as to this issue.  *See Alexander v.*

*Lafler*, No. 11-CV-10286, 2013 WL 3191134, *10 (E.D. Mich. June 21, 2013)

(denying habeas relief on witness coercion claim); *see also Greene v. Burt*, No. 15-

CV-13008, 2018 WL 1784501, *5, n. 2 (E.D. Mich. April 13, 2018) (same).

Nonetheless, even assuming that Petitioner states a due process claim on

habeas review, he is not entitled to relief.  The record does not support his assertion

of improper witness coercion.  Demerious Cunningham admitted at trial that he

initially lied to the police because he did not want to be involved and was scared for

his family.  When the police questioned him again, Demerious implicated Petitioner.

Demerious testified that he changed his mind after the police told him that they were

going to give him four years if he lied during a police investigation.  (*See* ECF 8-13,

9/24/13 Trial Tr., pp. 195-96, PageID.1066-1067.)  Informing a witness about the

potential consequences of lying or not cooperating with the authorities, without

more, does not constitute coercion.  *See generally Brady v. United States*, 397 U.S.

742, 750-51 (1970); *McKinney v. Ludwick*, 649 F.3d 484, 491-92 (6th Cir. 2011)

(citing cases for rule that informing a suspect about legal consequences of crime and cooperation benefits is not inherently coercive so as to render police statements involuntary); *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995) (warning a witness of consequences of perjury does not constitute a due process violation). Moreover, given Demerious' testimony, the jury was aware of the circumstances surrounding his police statements and trial testimony and was able to judge his credibility and motivations for testifying at trial.  Due process is not violated by the admission of witness testimony allegedly secured through police intimidation where the jury hears evidence regarding the alleged intimidation.  *See Johnson*, 525 F.3d at 481; *see also Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, *2 (6th Cir. Nov. 30, 2016).

Lastly, Petitioner fails to show that Demerious testified falsely at trial or that the prosecutor knowingly presented false testimony.  The fact that a witness contradicts himself or changes his story does not establish perjury, *see, e.g., Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003), and mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by a prosecutor.  *Coe*, 161 F. 3d at 343.  "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty."  *Jackson v.*

*Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009). Petitioner fails to establish a due process violation.

As to LaShonda Cunningham, the record does not indicate that she was coerced to lie to implicate Petitioner in the crime.  At the preliminary examination, LaShonda testified that she was trying to cooperate with the police and tell them what she knew, but they did not like what she was saying and arrested her.  They told her that they would "take [her] down" if she did not tell them who came to her house and tell them her sons' whereabouts.  She signed a statement and was released from custody.  (*See* ECF No. 1, Pet. App. Brf., p. 10 n. 9, PageID.31 (citing 9/28/12 Prelim. Ex. Tr., p. 154).)[2]  While the police may have pressured LaShonda into providing a statement, there is no evidence that she changed her story or gave a false statement to police or testified falsely at trial.  Moreover, as discussed by the Michigan Court of Appeals, any error in admitting LaShonda's testimony was harmless.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18

---

[2]The preliminary examination transcript was not submitted to this Court as part of the state court record.

(2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).  The prosecution in this case presented significant evidence of Petitioner's guilt at trial, including testimony from the surviving victim and co-defendants who participated in the crime.  Given such evidence, any error in admitting LaShonda's testimony did not have a substantial or injurious effect or influence on the jury's verdict.  More pointedly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect is reasonable.  Petitioner fails to establish a due process violation.

Petitioner also asserts that the trial court coerced Michael Evans into testifying at trial by threatening to void his plea agreement if he refused to testify. (Petition PageID.42.) Prior to Evans' testimony (outside the jury's presence), the trial court gave Evans and his counsel time to discuss whether he was going to testify at trial. The court informed the parties that if Evans refused to testify, the court was going to "snatch" his plea agreement out of the file and have him go to trial.  After meeting with counsel, Evans chose to testify in order to comply with his plea agreement. (*See* ECF No. 8-15, 9/26/13 Trial Tr., pp. 40-41, PageID.1334-1335.)  Evans testified about his plea and the plea agreement was entered into evidence.  (*Id*. at pp. 57-58, PageID.1351-1352.)

16

The Michigan Court of Appeals considered this claim on plain error review and denied relief.  The court explained:

> Felando also argues that the trial court coerced Evans into testifying by stating its intention to void his plea agreement if he refused to testify. After Evans indicated that he might refuse to testify, the trial court stated that it would "snatch[ ] that agreement out of this file, and [Evans] will go to trial...." The trial court then provided Evans almost 30 minutes to speak with his attorneys. After this conversation, Evans agreed to testify. Under the circumstances, we cannot conclude that Evans was coerced by the trial court into testifying. He was given ample opportunity to consult with his attorneys and decide, in light of his plea agreement, whether to testify. Moreover, the jury was well-informed that Evans was testifying pursuant to a plea agreement. The jury was able to consider the effect of this fact on Evans's credibility. Felando was not denied a fair trial.

*Hunter*, 2016 WL 1039533 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Informing a witness about the consequences of testifying or not testifying at trial, including the potential effect on the witness' own plea deal which was contingent on his testimony, does not constitute coercion.  This is particularly true where, as here, the witness was given ample time to consult with counsel about his decision.  Additionally, the record shows that Evans' plea deal was disclosed at trial, thereby allowing the jury to consider his motivation for testifying at trial and to evaluate his credibility. Petitioner fails to establish a due process violation.  Habeas relief is not warranted on

this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to object and seek suppression of the aforementioned witnesses' testimony.  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id*. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the

18

challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals considered this claim and denied relief. The

court ruled that Petitioner failed to establish that trial counsel was ineffective because the underlying issues lack merit and counsel cannot be ineffective "for failing to make a futile objection." *Hunter*, 2016 WL 1039533 at \*3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' decision and this Court's decision that the witnesses were not coerced into testifying for the prosecution, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Habeas relief is not warranted on this claim.

### 2.   Prosecutorial Misconduct and Ineffective Assistance of Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of witnesses. Specifically, he asserts that the prosecutor vouched for witnesses Montgomery and Evans by eliciting testimony that those witnesses testified pursuant to plea agreements. (Petition PageID.44.) Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the prosecutor's conduct. (*Id.*) Respondent

20

contends that this claim is procedurally defaulted in part and that it lacks merit. (Response PageID.134.)

As discussed, the Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger*, 295 U.S. at 88.  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals considered this claim on plain error review and denied relief.  The court explained in relevant part:

> As Felando acknowledges, a prosecutor does not impermissibly vouch for a witness's credibility by referring to the fact that the witness has agreed to provide truthful testimony pursuant to a plea agreement. However, a prosecutor may impermissibly vouch for the credibility of a witness by using the plea agreement in a way that suggests that the government has special knowledge of the witness's truthfulness. Felando argues that by referencing the fact that Montgomery and Evans entered their pleas before they testified, the prosecutor inferred that she had verified their testimony. Otherwise, Felando contends, the prosecutor would have objected to entry of the pleas. Felando's argument is logically flawed. At the time the witnesses entered their pleas, they had not testified. The prosecutor could not have verified the veracity of testimony that had yet to occur, and thus, had no reason to object to the pleas at the time they were entered. The prosecutor in no

way suggested she had any special knowledge that Montgomery and
Evans were providing truthful testimony.

*Hunter*, 2016 WL 1039533 at *3 (footnotes with citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor

an unreasonable application of federal law or the facts.  It is well-settled that it is

improper for a prosecutor to express his or her own personal beliefs and opinions

concerning the credibility of a witness.  *See United States v. Young*, 470 U.S. 1, 9-10

(1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such

statements are improper because they can convey the impression that the prosecutor

has evidence not presented to the jury which supports the charge against the

defendant thereby infringing upon the defendant's right to be judged solely based

upon the evidence presented and because the prosecutor's opinion carries with it the

imprimatur of the Government and may induce the jury to trust the Government's

judgment rather than its own.  *See United States v. White*, 58 F. App'x 610, 617-18

(6th Cir. 2003) (citing cases).

In this case, the prosecutor did not improperly vouch for the two witnesses'

credibility by eliciting testimony about their plea agreements.  A claim similar to

Petitioner's was rejected in *United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004),

where the prosecution noted that two witnesses "promised to be truthful and provide

complete information" pursuant to their plea agreements.  The Sixth Circuit held

such remarks did not constitute improper vouching because the prosecution:

> did not offer any personal observations or opinions as to the veracity of either [witness], nor did she place the prestige of the Government behind their credibility. Rather, the prosecutor's questions and comments merely encompassed the terms of [the] plea agreements which this Court has held to be permissible.

*Id.* at 608-09; *see also United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005) (citations omitted) ("improper vouching includes either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury.").  In this case, the prosecution did not imply any specialized knowledge of whether witnesses Montgomery and Evans had testified truthfully.  Rather, the prosecution simply presented evidence of their plea agreements.  Petitioner fails to establish that the prosecution erred or that he was denied due process.  Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that trial counsel was ineffective for failing to object to the prosecutor's conduct at trial.  As discussed, in order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

The Michigan Court of Appeals considered this claim and denied relief.  The court ruled that Petitioner failed to establish that trial counsel was ineffective

because the underlying claim lacks merit and counsel cannot be ineffective "for failing to make a futile objection." *Hunter*, 2016 WL 1039533 at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' decision and this Court's decision that the prosecutor did not engage in misconduct which rendered the trial fundamentally unfair, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by his counsel's conduct. As discussed, counsel cannot be deemed ineffective for failing to make a futile or meritless objection. *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Habeas relief is not warranted on this claim.

### 3.    <u>Admission of Other Acts Evidence Claim</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence, which consisted of Demerious Cunningham's testimony relating Petitioner's out-of-court statements about an unrelated carjacking. (Petition PageID.49.) Respondent contends that this claim is waived, procedurally defaulted, and not cognizable. (Response PageID.142.)

A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are

generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals considered this claim and denied relief.  The court ruled that the claim was waived by trial counsel's agreement that the prosecutor was not admitting the evidence to prove Petitioner's propensity to commit a crime.  The court further ruled that, even if the trial court erred in admitting the evidence, such an error did not affect the outcome at trial.  The court explained in relevant part:

> But even if the trial court abused its discretion by admitting the evidence, reversal is not warranted. Multiple witnesses testified to Felando's involvement in the crime, including Terrance, who was beaten during the robbery that preceded John's murder; Montgomery,

who orchestrated the crime; and Evans, the getaway driver. Brandon also testified to Felando's involvement. Demerious testified that Felando explained his own involvement in the crime in detail. The fact that Felando had apparently also committed a carjacking was insignificant. The point was not stressed when the prosecutor questioned Demerious. Nor was this fact relied on by the prosecutor in her closing argument. On the whole, the single mention of this carjacking did not affect the outcome of the trial, and thus, reversal is not required.

*Hunter*, 2016 WL 1039522 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent or the facts.  First, to the extent that Petitioner asserts that the trial court erred in admitting evidence under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  *See, e.g., Bey*, 500 F.3d at 519.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does not lie for perceived errors of state law.  *Estelle*, 502 U.S. at 67-68.

Second, Petitioner fails to establish that the admission of the other acts evidence resulted in a federal due process violation.  As to the admission of other

acts evidence, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id*. at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim as to the admission of the other acts testimony, he is not entitled to federal habeas relief. He fails to show that the admission of the carjacking testimony rendered his trial fundamentally unfair. As discussed, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Fry*, 551 U.S. at 117-18; *Ruelas*, 580 F.3d at 411. Given the significant evidence of Petitioner's guilt presented at trial, including testimony from the surviving victim and from co-defendants who participated in the

crimes, any error in admitting the carjacking testimony did not have a substantial or injurious effect or influence on the jury's verdict.  More importantly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect is reasonable. Habeas relief is not warranted on this claim.

## V.   <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner's claims lack merit and that he is not entitled to federal habeas relief.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a

constitutional right as to his habeas claims.  Accordingly, the Court **DENIES** a

certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken

in good faith.  *See* FED. R. APP. P. 24(a).  Accordingly, the Court **DENIES** Petitioner

leave to proceed in forma pauperis on appeal.  This case is **CLOSED**.

**IT IS SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 27, 2020